AMOS W. HAZARD, Admr., *vs.* JAMES COYLE, Exr.

PROVIDENCE—FEBRUARY 25, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Equity Pleading. Motion to Dismiss.*

Pending an action at law the complainant brought a bill in equity to enjoin the respondent from prosecuting in set-off certain promissory notes; the respondent consented to the entry of a decree sending the case to a master; testimony was put in and report filed. The respondent then

asked for a dismissal of the bill on the ground that complainant had an adequate remedy at law in the defence to the notes in the pending action :—

*Held,* that if the point had been raised when the bill was filed, although there were concurrent remedies, the court would have left the matter to be determined in the pending suit; but the bill being sustainable on other grounds, the motion came too late at this time.

(2) *Fraudulent Conveyances.*

A conveyance made for the purpose of protecting a party from litigation, in the absence of proof that there were creditors at the time as to whom an intent to hinder would be fraudulent, and where the conveyance does not show fraud by its own terms, is valid between the parties and void only as to creditors.

A., to protect himself against litigation, conveyed a portion of his property to B., without consideration, to hold for the benefit of A. A. was solvent without such portion. B. executed a mortgage of the property to A. to secure certain promissory notes given to insure the performance of the trust. Subsequently B. conveyed the property to C. at the request of A., but the notes were not delivered up or the mortgages discharged, but, on the contrary, were assigned by A. to C. and the mortgages foreclosed :—

*Held,* that the legal effect of the transaction was to extinguish the notes as debts.

*Held,* further, that, no creditors having been defrauded, the arrangement having been disaffirmed and the parties restored to their original position, except in regard to the notes, that B. was entitled to have the notes given up.

BILL IN EQUITY seeking to enjoin the prosecution of certain promissory notes in set-off to an action at law. The facts are stated in full in the opinion. Heard on bill, answer, and report of master.

(1)    STINESS, C. J.    This is a bill to enjoin the respondent from prosecuting in set-off certain promissory notes in an action of assumpsit now pending between the complainant and respondent.

The bill was answered, and, by consent of parties, sent to a master, who has heard the testimony and has made report of his findings.

The complainant asks for the entry of a decree. The respondent objects and asks for a dismissal of the bill upon the ground that it is without equity, because the complainant

has an adequate remedy at law in the defence to the notes in the pending action.

The respondent claims the right to raise the point at any stage of the proceedings.

As a general rule, in cases which do not otherwise state a case for equitable relief, doubtless, this is so; for in such case there would be no ground for jurisdiction in equity. When a court has no jurisdiction of a cause, it should stop at any point where the fact appears.

We think, however, that this bill is sustainable on other grounds. It appears that the respondent's testator, George B. Hazard, conveyed certain real estate to the complainant's intestate, Rowland A. Hazard, in 1888, without consideration, upon the understanding or trust that Rowland was to hold the same for the benefit of said George, the latter taking mortgages on the property, securing promissory notes from Rowland to him, to insure the performance of the trust. These notes were transferred by George in his life-time, without consideration, to Coyle as trustee, the complainant alleging that the latter trust was for his benefit, he having conveyed the property back to George or to his order. Upon such a state of facts and before suit a bill for delivering back the notes would lie, even though the complainant might have a defence to them at law, in case the suit should be brought. When there are several notes, it might, at law, prevent a multiplicity of suits.

But in this case the suit at law was brought first. The complainant could have defended against them both at law and by equitable defence under our statute. Had the point of a remedy at law been taken when the bill was filed, although there were concurrent remedies, the court would have left the matter to be determined in the suit then pending. *McCulla* v. *Beadlestone*, 17 R. I. 20. Instead of raising the point, however, the respondent consented to a decree sending the cause to a master, testimony was fully put in and report made. Now the respondent moves that the complainant be put to another trial of the same matter. The bill being sustainable on other grounds, the motion comes too late.

(2)    The respondent's objection to the entry of a decree is based upon the ground that the transfer, including the notes and mortgages, was made with a fraudulent intent, and that the complainant, having been a party to the transaction, can have no relief.

The master has found in this case that the mortgages and notes were a part of the arrangement for the protection of George B. Hazard against litigation, in the carrying out of which the transfer of real estate from him to Rowland was made.   The master also finds that for some time before May, 1887, when the first deed was made from George to Rowland, the property had stood in the name of George's stepdaughter, and that a deposit of about thirty thousand dollars in a Newport national bank was made payable, in certain circumstances, to her as well as himself ; that George, then nearly eighty years old, arranged with Rowland to go to Newport to take charge of and manage his real estate for him, giving the deed as stated, and afterwards other deeds.

It also appears that in April, 1890, George B. Hazard gave to the respondent in this case an order on the Industrial Trust Company, of Providence, for upwards of $47,000.   Under these circumstances, and in the absence of proof that there were creditors at the time as to whom an intent to hinder would be fraudulent, it is not clear that there was a fraud in fact.   Between the parties the transaction would be valid ; it is void only as to creditors.   It is not like a transaction that is wrong in itself or that violates a penal statute, and hence must be governed by considerations of public policy. This violation of the statute is one which can be set up only by creditors, *Hudson* v. *White*, 17 R. I. 519, or in cases like *Apponaug Co.* v. *Rawson*, 22 R. I. 123, where a party sought to enforce the secret trust of a deed which showed the fraud by its own terms.   It was intimated in *Hudson* v. *White* that the transfer of a portion of one's property, as, in that case, a homestead, to secure the family from disturbance in the absence of the husband, when one is solvent without such portion, is not necessarily a fraudulent act.   Apparently this is such a case.   The respondent here is not a creditor of

either party. He is the voluntary assignee of the overdue notes in question. He has no greater rights than George B. Hazard would have had. That brings us, then, to the question whether George B. Hazard could have enforced them.

With no creditors intervening and the deeds valid as between the parties, we see no reason why he should have done so. It appears from the report of the master that Rowland conveyed the property to the respondent at the request of George, but that the notes were not then delivered up nor the mortgages discharged. He also finds that no express agreement is proved that this should be done. He also finds that they were not withheld upon any other trust between the parties. The situation, then, is this : The property was conveyed and notes and mortgages were given under an arrangement that Rowland should hold the same to be reconveyed to George or to such person as he should name, and that the property was so conveyed. Although no express agreement for the redelivery of the notes is shown, it is clear that they no longer remained as subsisting obligations. As the master says, with both parties dead and meagre testimony, it is difficult to understand what object the parties could have had in apparently keeping them alive. The legal effect of the transaction, however, was to extinguish them as debts. The conduct of the parties was not consistent with this result, for George not only assigned the notes and mortgages, but the mortgages were foreclosed by sale without objection on the part of Rowland. Still, if the notes had ceased to be debts from Rowland to George, we do not see that this procedure, not affecting third parties, could alter the relation of the parties to the original transactions.

The case as it thus stands upon the findings of the master, to which there is no objection, is radically different from *Apponaug Co.* v. *Rawson, supra*, relied on by the respondents, and also from the cases cited by him. In *Bryant* v. *Mansfield*, 22 Me. 360, the complainant asked for a return of her note, no reconveyance of the property having been made. She offered in her bill to reconvey, but this was asking the court to rescind a contract which, as the court held, was good

as between the parties.    *Servis* v. *Nelson*, 14 N. J. Eq. 94, was a similar case.    If the contract is executory, a different rule prevails.    In *Block* v. *Darling*, 140 U. S. 234, it was held that money deposited by the plaintiff with the defendant in order to cheat and defraud plaintiff's creditors, may be recovered back by him.    So in *Spring Co.* v. *Knowlton*, 103 U. S. 49, it was held that a party to a contract the making of which, although prohibited by law, is not *malum in se* may, while the contract remains executory, rescind it and recover money by him advanced thereon to the other party who had performed no part thereof, citing *Taylor* v. *Bowers*, 1 Q. B. Div. 291, a case similar to the case at bar.    Lord Mellish said in this last case : "The illegal transaction was not carried out ; it came wholly to an end.    To hold that the plaintiff is entitled to recover does not carry out the illegal transaction, but the effect is to put everybody in the same situation as they were before the illegal transaction was determined upon, and before the parties took any steps to carry it out.    That, I apprehend, is the true distinction in point of law.    If money is paid or goods delivered for an illegal purpose, the person who had so paid the money or delivered the goods may recover them back before the illegal purpose is carried out ; but if he waits till the illegal purpose is carried out, or if he seeks to enforce the illegal transaction, in neither case can he maintain an action."

See also *Day* v. *Lown*, 51 Iowa, 364 ; *Walton* v. *Tusten*, 49 Miss. 569.

So far as appears in this case, no creditors have been defrauded, the arrangement has been disaffirmed and the parties restored to their original position, except in regard to these notes.

We think that the complainant is entitled to a decree.

*C. E. Champlin and C. H. Page*, for complainant.

*S. R. Honey, Frank F. Nolan, and Edwards & Angell*, for respondent.